UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

  Plaintiff,

v.                No. CR 07-748 MCA

**BRADLEY WASSON**, *et al.*,

  Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the *United States' Motion for Court to Inspect Any Joint Defense Agreement In Camera* [Doc. 162] filed on November 5, 2007. Having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises, the Court denies the Government's motion without prejudice for the reasons set forth below.

**I.  BACKGROUND**

On June 27, 2007, the Court unsealed a *Superseding Indictment* [Doc. 36, 44] charging the four Defendants in this case with several violent crimes in aid of racketeering activity under 18 U.S.C. § 1959. The *Superseding Indictment* includes special findings under 18 U.S.C. §§ 3591 and 3592 which could make three of the Defendants (Bradley Wasson, Benjamin Raymond, and Travis Loren Dally) eligible for a sentence of death if they are convicted.

On July 27, 2007, the Court appointed learned counsel for Defendants Wasson, Raymond, and Dally pursuant to 18 U.S.C. § 3005. [Doc. 51, 52, 53, 59, 60, 61, 62, 63, 64.]

Pursuant to the Criminal Justice Act (CJA), the Court also appointed counsel for the fourth Defendant, Jeremiah Looney, on August 2, 2007. [Doc. 69.] The Court entered an *Amended Order Setting Trial Date* [Doc. 166] and a *Scheduling Order* [Doc. 167] on November 13, 2007. Pursuant to those rulings, the parties are scheduled to complete discovery on April 18, 2008, with a jury selection and trial to follow on May 18, 2009. The case currently remains in its pre-authorization phase, with no final decision yet as to whether the Government will seek the death penalty as to any Defendant.

## II.  ANALYSIS

On November 5, 2007, the Government moved for the Court to conduct an *in camera* inspection of any "joint defense agreement" (JDA) among or between Defendants and their counsel in this case. According to the Government's motion, such *in camera* review is necessary to ensure that any JDA "(1) be in writing and signed by all participating defendants and defense counsel; and (2) contain language that ensures that the agreement does not create (or waives) any duty of loyalty, confidentiality obligation, or attorney-client privilege between any defendant and any attorney who is not his assigned counsel." [Doc. 162.] As authority for imposing such requirements, the Government refers to the protocol established in United States v. Stepney, 246 F. Supp. 2d 1069 (N.D. Cal. 2003), in the wake of the Ninth Circuit's opinion in United States v. Henke, 222 F.3d 633 (9th Cir. 2000) (per curiam).

On November 19, 2007, Defendant Raymond filed a response in opposition to the Government's motion, which was joined by Defendant Wasson. [Doc. 173, 174.] In their responses, Defendants Raymond and Wasson neither confirm nor deny whether a JDA exists

as to any Defendant in this case or whether its terms include the features that the Government wants. Defendant Dally has not filed a response stating his position on the record as to this issue. The Government represents that counsel for Defendant Looney has stated that neither she nor her client are parties to any JDA as of the date the motion was briefed. [Doc. 162, 176.]

This Court has the supervisory authority to review JDAs for the purpose of inquiring into actual or potential conflicts of interest among or between counsel and their clients. See Stepney, 246 F. Supp. 2d at 1076-78. It does not follow, however, that every JDA in every case is so "likely to lead to conflicts caused by cooperation between defendants" that it is necessary for the Court to intervene and review the precise terms of the JDA at the outset of the litigation, id. at 1078, as the Government requests be done in the present case.

Stepney involved an unusual set of circumstances where there were "a series of three indictments" charging "a total of nearly thirty defendants with over seventy substantive counts relating to the operation of the gang over a period of several years." Id. at 1072. Some of the defendants had already entered guilty pleas and cooperated with the Government. One of the cooperating defendants had been murdered and another had received threats. These facts clearly indicated a lack of cohesive interests among defendants that greatly raised the potential for conflicts of interest to arise between them and their counsel. See id. at 1078.

Moreover, there was concrete evidence before the Stepney Court that such potential might have ripened into an actual conflict when, more than one year after the parties' initial

appearance, the attorney for one of the defendants moved to withdraw from his representation on the grounds that he had entered into a joint defense agreement with another defendant who he had since come to believe was cooperating with the prosecution. This controversy was resolved by means of a colloquy in which the cooperating defendant waived any attorney-client privilege with respect to information received by the attorney who had moved to withdraw, and the Court ordered further review of the JDAs at issue in the case. See id. at 1072.

Similarly, the convictions which the Ninth Circuit reversed in Henke, 222 F.3d at 637-38, arose from an unusual situation where there were clear indications that the district court needed to intervene and act upon a conflict of interest before the defendants went to trial on various insider-trading and securities-fraud charges. The issue was timely raised *by defense counsel* in letters to opposing counsel seeking to enforce the JDA, as well as a motion to disqualify. See id. at 637-38. "Under these circumstances, the district court erred in not fully acknowledging the conflict and then acting on its implications." Id. at 638.

The Ninth Circuit emphasized, however, that not all "joint defense meetings are in and of themselves disqualifying," and that defense counsel (who "timely moved for disqualification") was "'in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of at trial.'" Id. (quoting Holloway v. Arkansas, 435 U.S. 475, 485 (1978)). Further, there was nothing in the record in Henke "to suggest that the attorneys were doing anything other than attempting to adhere to their ethical duties as lawyers." Id.

At this preliminary juncture, the Court is not persuaded that the reasoning of <u>Henke</u> and <u>Stepney</u> requires an *in camera* review of any JDA that may exist in the case at bar. While the charges against the Defendants in this case involve some degree of complexity, the Court simply is not faced with the thirty defendants and seventy-count indictments at issue in <u>Stepney</u>.  There are three Defendants in this case who may have entered into a JDA (given counsel's representation that Defendant Looney is not party to such an agreement), and the record developed thus far does not support a reasonable inference that there is a significant lack of cohesive interests among these Defendants or their counsel.

Unlike the facts in <u>Henke</u> (which was not a capital case), the Court has appointed learned counsel for each of the three Defendants at issue here.  In light of their expertise in handling complex capital cases, the Court thus far has no reason to question or doubt that appointed counsel are "in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of at trial." <u>Holloway</u>, 435 U.S. at 485.

The Court further finds that, in this special context, JDAs may serve the legitimate purpose of conserving resources and thereby ensuring that the limited funding available under the CJA is used efficiently.  To advance this purpose, the Court has required appointed counsel to submit comprehensive budgets for the pre-authorization phase of the litigation, which are filed *ex parte* and under seal.

In addition, the Court has established deadlines for timely raising issues relating to reciprocal discovery, as well as changes of plea and pretrial motions to withdraw or

disqualify. Should any person wish to raise a joint-defense privilege premised on the existence of a JDA at the appropriate time, that person will bear the burden of demonstrating the JDA's existence and applicability. See United States v. LeCroy, 348 F. Supp. 2d 375, 381 (E.D. Pa. 2004) (citing United States v. Weissman, 195 F.3d 96, 99 (2nd Cir. 1999)).

To meet such a burden, a person may need to satisfy a number of requirements, including (1) that the communication at issue "was given in confidence and that the client reasonably understood it to be so given," United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989); (2) that "the communications were made in the course of a joint defense effort"; (3) that "the statements were made in furtherance of that effort"; (4) that "the clients reasonably believed that their statements were being made within the context and in furtherance of their joint defense"; and (5) that "the privilege has not been waived." LeCroy, 348 F. Supp. 2d 381 (citations omitted). While the Government cites one instance in which the Ninth Circuit applied the privilege to a co-defendant who became a witness for the Government shortly before trial, see Henke, 222 F.3d at 637-38, other courts have concluded that the privilege was waived as to statements by a co-defendant who elected to testify as a government witness, see, e.g., United States v. Almeida, 341 F.3d 1318, 1326 (11th Cir. 2003).

In light of these requirements for successfully asserting the joint-defense privilege, those persons who contemplate entering into a joint defense agreement have a strong incentive to ensure that it contains the provisions necessary to establish its existence and applicability as to a particular defendant should the privilege later be challenged in court.

While a failure to include the specific provisions requested by the Government in this case could conceivably result in a situation like Henke where defense counsel is erroneously forced to go to trial under a conflict of interest which benefits the Government, it is also conceivable that a failure to include such provisions in a JDA could serve to preclude a person from proving the JDA's existence or applicability, with the result that a particular defendant loses the privilege to the benefit of other defendants.  See, e.g., Almeida, 341 F.3d at 1326; LeCroy, 348 F. Supp. 2d at 383.

Lacking any specific factual basis for anticipating either of these outcomes in this case, the Court concludes that it would be premature to conduct an *in camera* review of any JDAs at this time.  Without a more specific factual basis for conducting such review, performing this task at this preliminary juncture could turn out to be an empty gesture that does nothing to prevent or resolve future disputes.  Cf. United States v. Austin,  416 F.3d 1016, 1018-19 (9th Cir. 2005) (dismissing an interlocutory appeal concerning the assertion of a privilege under a JDA where the terms of the JDA previously had been reviewed and approved by the district court before the controversy arose).

The Court is willing to reconsider the propriety of reviewing a JDA at some future date in the event that the parties or their counsel come forward with additional facts to show that an actual controversy concerning the assertion of a joint-defense privilege, or a conflict-of-interest arising from such a privilege, is reasonably likely to occur.  The Court's scheduling orders in this case leave adequate time to address such an anticipated controversy well in advance of the scheduled trial date.

### III. CONCLUSION

For the foregoing reasons, the Court denies the Government's motion for *in camera* review of any JDA involving the Defendants and their counsel in this case. The Court's ruling at this preliminary juncture does not preclude any party or their counsel from seeking, or voluntarily submitting to, an *in camera* review of a JDA at an appropriate future date consistent with the Court's scheduling orders.

**IT IS THEREFORE ORDERED** that the *United States' Motion for Court to Inspect Any Joint Defense Agreement In Camera* [Doc. 162] is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED** in Albuquerque, New Mexico, this 6th day of February, 2008.

**M. CHRISTINA ARMIJO**
United States District Judge